UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Michael, Lynda, Jeremiah,
and Christopher Martel</u>

    v.                                      Civil No. 12-cv-74-JD
                                                          Opinion No. 2013 DNH 098

<u>Town of Chichester, Patrick Clarke,
Jonathan Adinolfo, Town of Epsom,
Wayne Preve, Brian Michael,
and Dana Flanders</u>

<u>O R D E R</u>

Michael and Lynda Martel and their sons, Jeremiah and Christopher, brought suit in state court against the Town of Epsom, its police chief, and two police officers and the Town of Chichester, its police chief, and one police officer. The defendants removed the case to this court. The defendants move for summary judgment, and the Martels object. The defendants filed replies to the Martels' objection.

<u>Standard of Review</u>

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Material facts are "facts that might affect the outcome of the suit under the governing law." Id. at 248. The court considers the undisputed material facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011).

## Background

The Chichester defendants are the Town of Chichester, Chichester Chief of Police Patrick Clarke, and Officer Jonathan Adinolfo. The Epsom defendants are the Town of Epsom, Epsom Police Chief Wayne Preve, Sergeant Brian Michael, and Patrolman Dana Flanders. The plaintiffs are Lynda Martel and Michael Martel, Sr., and their sons Jeremiah and Christopher. Michael Martel, Jr. ("Michael Jr.") is also a son of Lynda and Michael, Sr., but he is not a party in this case.

Before the events at issue in this case occurred, Nicole Taylor had had a relationship with Michael Jr. On August 15, 2011, Taylor obtained a domestic violence protective order against Michael Jr. The protective order, among other things, required Michael Jr. to "relinquish to a peace officer all firearms and ammunition in [his] control, ownership or

possession, or in the possession of any other person on behalf of the defendant . . . ."

Officer Adinolfo received the protective order the afternoon it was issued. Adinolfo knew from prior experience that the Martels had guns. He asked the Epsom Police Department to provide back-up assistance to serve the protective order on Michael Jr. at the Martels' house. Epsom Sergeant Brian Michael and Patrolman Dana Flanders responded to Officer Adinolfo's call for assistance.

The three officers arrived at the Martels' home at about 3:45 p.m. on August 15, 2011. When Michael Jr. came to the door, Officer Adinolfo confirmed that he was talking to the right person by checking Michael Jr.'s driver's license. He then explained the protective order to Michael Jr. and gave him a copy. Adinolfo explained that all firearms on the property had to be relinquished to the officers. Michael Jr. and the other members of his family were upset by the requirement but complied with the order. The officers collected eleven firearms along with ammunition from the Martels. A property form was completed, and a copy was left at the house for the Martels. Officer Adinolfo, Sergeant Michael, and Patrolman Flanders left the Martels' house at 4:12 that afternoon.

Lynda and Michael Martel, Sr. filed a motion in the Concord Family Division to intervene in the domestic violence hearing and requested return of their firearms. The Concord Family Division denied their motion. On October 26, 2011, the Concord Family Division issued an order that allowed return of the firearms to the Martels. On October 27, the Chichester Police Department returned the firearms and ammunition.

## Discussion

The Martels bring civil rights claims under 42 U.S.C. § 1983, alleging that the defendants violated their Second and Fourth Amendment rights.[1] They also bring state law claims for trespass and invasion of privacy against all of the defendants, for negligent hiring and supervision against the towns, and for violation of the New Hampshire Constitution against all of the defendants. The defendants move for summary judgment on the federal claims on the grounds that no violation of the Martels' federal rights occurred, that the officers are entitled to qualified immunity, and that the plaintiffs cannot prove a claim

---

[1] The Martels also cite the Fourteenth Amendment but do not allege claims of procedural or substantive due process violations. Instead, reference to the Fourteenth Amendment apparently is made because the Second and Fourth Amendments are applicable to the states through the Fourteenth Amendment.

4

under § 1983 against the towns or chiefs of police.  The defendants move for summary judgment on the state claims on the grounds of official immunity, that the plaintiffs have not stated a claim under the New Hampshire Constitution, and that the towns are entitled to vicarious official immunity, discretionary function immunity, and statutory immunity.

In response, the Martels objected to summary judgment only as to Counts I and II, which are the claims under § 1983 alleging violation of the Second and Fourth Amendments.[2]  The Martels concede that summary judgment is appropriate on their state law claims alleged in Counts III through VI.

In their reply, the Epsom defendants note that the Martels make no argument and provide no evidence in their objection to summary judgment to show that the Epsom defendants violated the Martels' rights.  Instead, the Martels focus on the actions of Chichester Police Officer Adinolfo.  In addition to challenging the claims on the merits, the Epsom defendants argue that they are entitled to summary judgment based on the Martels' failure to support their claims against them in opposition to their motion for summary judgment.

---

[2]The Martels also mention the New Hampshire Constitution, but those rights are not actionable under § 1983.  See, e.g., Holder v. Town of Newton, 2010 WL 3211068, at *2 (D.N.H. Aug. 11, 2010).

To survive summary judgment on their claims against the Epsom defendants, the Martels must show a genuine dispute of material fact as to whether those defendants violated their Second and Fourth Amendment rights.  Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 137 (1st Cir. 2012).  "On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing 'that there is an absence of evidence to support the nonmoving party's case.'" OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)); see also Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 398 (1st Cir. 2012).

In this case, the Martels bear the burden of proof on their § 1983 claims but provide no evidence or argument that the Epsom defendants violated their rights as they claimed.  While the Martels refer to deposition testimony by Epsom Sergeant Michael to support their objection to summary judgment on their claims against Chichester Officer Adinolfo, they make no argument that the Epsom defendants violated their rights.  Because the Martels have failed to provide any evidence to support their claims against the Epsom defendants in response to the motion for summary judgment, the Epsom defendants are entitled to judgment in their favor on Counts I and II.  Even if that were not the

case, however, the claims would also fail for the same reasons that summary judgment is appropriate in favor of the Chichester defendants, as is discussed below.

A.  Count I - Chichester Defendants

In Count I, the Martels allege that the Chichester defendants violated their rights under the Second Amendment when Officer Adinolfo seized the Martels' guns without a warrant.  In support of summary judgment, the Chichester defendants contend that they did not violate the Martels' Second Amendment rights because Adinolfo was authorized to remove the guns from the house by the domestic violence order and because the Martels complied with the officers' direction that they relinquish the guns. Adinolfo also contends that he is entitled to qualified immunity. Chichester and Chief Clarke contend that the Martels cannot prove their liability under § 1983.

1.  Chichester and Chief Clarke

The allegations against Chichester and Chief Clarke in Count I are that they "authorized, permitted, and tolerated the custom, policy and practice of seizing firearms in violation of the right of citizens to keep and bear arms, as protected by the Second and Fourteenth Amendments to the United States Constitution" by

deficiencies in appointing, promoting, training, and supervising their police officers, by failing to have procedures to serve restraining orders in compliance with the Second Amendment, and by failing to prohibit the seizure of guns from citizens. The defendants contend that the Martels cannot prove that they were harmed by an unconstitutional town policy or practice or that the chief is liable for a constitutional violation. See, e.g., Freeman v. Town of Hudson, 714 F.3d 29, 37-38 (1st Cir. 2013) (standard for municipal liability); Grajales v. P.R. Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012) (standard for supervisory liability).

The Martels make no effort to counter the motion for summary judgment with respect to Chichester or Chief Clarke and provide no evidentiary support for their claims. As explained above in the context of the Epsom defendants' motion, in response to a properly supported motion for summary judgment, the nonmoving party with the burden of proof on an issue "must point to competent evidence and specific facts to defeat summary judgment." Johnson v. Univ. of P.R., 714 F.3d 48, 53 (1st Cir. 2013). Therefore, Chichester and Clarke are entitled to summary judgment in their favor on Count I.

### 2. Officer Adinolfo

The Second Amendment protects the rights of individuals, as well as the people collectively, to keep and bear arms. United States v. Armstrong, 706 F.3d 1, 7 (1st Cir. 2013) (citing District of Columbia v. Heller, 554 U.S. 570, 576-626 (2008)). "[T]he possession of operative firearms for use in defense of the home constitutes the 'core' of the Second Amendment." Hightower v. City of Boston, 693 F.3d 61, 72 (1st Cir. 2012). The Second Amendment right is not unlimited, however, Heller, 554 U.S. at 626, and may be restricted by appropriate statutes and court orders, see, e.g., United States v. Mahin, 668 F.3d 119, 125 (4th Cir. 2012) (upholding constitutionality of 18 U.S.C.A. § 922(g)(8)); United States v. Bena, 664 F.3d 1180, 1183-84 (8th Cir. 2011) (same); Doutel v. City of Norwalk, 2013 WL 3353977, at *24-*25 (D. Conn. July 3, 2013) (Second Amendment does not apply to particular firearm); Powell v. Tompkins, --- F. Supp. 2d ---, 2013 WL 765339, at *9 (D. Mass. Feb. 28, 2013) (licensing requirements do not violate the Second Amendment).

Adinolfo contends that he did not violate the Martels' Second Amendment rights because he was authorized by the domestic violence protective order and RSA 173-B:4 to require Michael Jr. to relinquish his own guns and ammunition and the other guns and

ammunition in the house.[3]  In their objection, the Martels assert only that they did not voluntarily relinquish their firearms.

The Martels' argument concerning voluntary relinquishment is not supported by case law or by any developed theory with respect to the Second Amendment.  The Martels make no argument that either the protective order or RSA 173-B:4 violates the Second Amendment.  They neither argue nor provide facts to show that Adinolfo acted beyond the scope of the order.  Given the conceded validity of the protective order, the Martels have not shown a material factual dispute to avoid summary judgment on their Second Amendment claim.  See, e.g., Vallejo v. Santini-

---

[3]Before amendment on June 6, 2013, which is effective January 1, 2014, RSA 173-B:4 provided, in pertinent part, as follows:

> Upon a showing of an immediate and present danger of abuse, the court may enter temporary orders to protect the plaintiff with or without actual notice to defendant.  The court may issue such temporary orders by telephone or facsimile.  Such telephonically issued orders shall be made by a district or superior court judge to a law enforcement officer, shall be valid in any jurisdiction in the state, and shall be effective until the close of the next regular court business day. . . .  Such temporary relief may direct the defendant to relinquish to a peace officer any and all firearms and ammunition in the control, ownership, or possession of the defendant, or any other person on behalf of the defendant for the duration of the protective order. . . .

Padilla, 607 F.3d 1, 7 (1st Cir. 2010); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed."). Therefore, Adinolfo is entitled to summary judgment on Count I.

B.  Count II - Chichester Defendants

In Count II, the Martels allege that Officer Adinolfo violated their Fourth Amendment rights by entering their home and seizing their guns and ammunition without a warrant.[4] They allege that Chichester violated their Fourth Amendment rights by authorizing, permitting, and tolerating a practice of illegal warrantless searches and seizures of property. No claim against Chief Clarke is alleged in Count II.

Because the Martels provide no evidence to support their Count II claims against Chichester, Chichester is entitled to summary judgment on Count II. Adinolfo contends that he did not violate the Fourth Amendment and that he is protected by qualified immunity.

---

[4]Contrary to the Martels' allegations, Officer Adinolfo denies that he or any officer entered the Martels' home, and the Martels provide no evidence to support that allegation.

11

1.  <u>Fourth Amendment Violation - Adinolfo</u>

"The Fourth Amendment protects '[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'"  <u>United States v. Rigaud</u>, 684 F.3d 169, 173 (1st Cir. 2012) (quoting U.S. Const. amend. IV).  For that reason, police officers generally must have a warrant that is supported by probable cause to seize property.  <u>Rigaud</u>, 684 F.3d at 173.  A valid consent to a search or seizure obviates the warrant requirement.  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 222 (1973).

Adinolfo contends that he was authorized by the domestic violence protective order to require Michael Jr. to relinquish all of his firearms and ammunition and all of the firearms and ammunition in house, which were owned by others in his family.  Adinolfo also states that the Martels, although hostile to the order, complied with the requirement and provided their firearms and ammunition.  Although the Martels assert that "the police lacked property [sic] authority to force them" to surrender their firearms, they provide no argument or explanation to support that statement.[5]  Instead of disputing the authorization provided by

---

[5] In the context of qualified immunity and without citing any supporting legal authority, the Martels argue that no reasonable police officer could have believed the domestic violence protective order authorized him to seize firearms from anyone

the protective order, the Martels contend that they did not voluntarily surrender their firearms and ammunition, and therefore did not provide valid consent to the seizure.

Because the Martels do not dispute with any developed argumentation that Adinolfo was authorized by the domestic violence protective order to require Michael Jr. to relinquish all of the firearms in the house, including those belonging to his family, they have not shown a triable issue on their Fourth Amendment claim.  When the seizure of property is properly authorized, consent is not necessary.  Therefore, it is unnecessary to decide whether the Martels also consented to the seizure of their firearms.

Even if the Martels could show a violation of the Fourth Amendment, however, Adinolfo would be protected by qualified immunity.

2. <u>Qualified Immunity - Adinolfo</u>

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

other than Michael Jr.

known.'"  Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009), additional internal quotation marks omitted).  To be a clearly established right, it must be shown by "authority sufficiently particularized that the unlawfulness of an act would have been apparent to all officers of reasonable competence."  Lopera v. Town of Coventry, 640 F.3d 388, 398 (1st Cir. 2011).

    Adinolfo contends that he is entitled to qualified immunity because the law was not clearly established so that a reasonable police officer would know that he would violate the Martels' Fourth Amendment rights by requiring Michael Jr. to relinquish all guns and ammunition in the house, pursuant to the domestic violence protective order.  Although the general Fourth Amendment protections were clearly established, the more particularized application of the Fourth Amendment in the circumstances of this case does not appear to have been addressed in any reported cases.  Cf. Slough v. Telb, 644 F. Supp. 2d 978, 990-91 (N.D. Ohio 2009) (no qualified immunity when officers searched a gun safe and seized weapons out of concern for the safety of family members without a warrant, a protective order, or exigent circumstances).  Therefore, in the absence of a clearly established constitutional right, Adinolfo is entitled to qualified immunity.

The Martels contend, nevertheless, that a reasonable police officer in Adinolfo's position would not have relied on the domestic violence protective order as authorization to seize firearms from them.  In support, the Martels cite the deposition testimony of Epsom Sergeant Michael who answered hypothetical questions posed by the Martels' lawyer at his deposition.  The Martels claim that Sergeant Michael testified that if he had faced the same circumstances as Adinolfo, he would have gotten a search warrant before attempting to take the firearms.

As a threshold matter, the reasonable officer test for purposes of qualified immunity is an objective test.  The test is not what a specific officer actually would have done under the circumstances but what a reasonable police officer in Adinolfo's position would have done.  In addition, Sergeant Michael's testimony was different from the Martels' representation.

The Martels' lawyer asked Sergeant Michael:  "So what would you do if a person said Sgt. Michael, I have -- I have firearms in my -- locked up in my gun safe but I'm not giving them to you?"  Sergeant Michael responded that he would apply for a search warrant to get the firearms.  The Martels provide no evidence that they told Officer Adinolfo that the firearms were locked in a gun safe and that they would not relinquish them.  In fact, the evidence is that when directed to relinquish their

firearms, the Martels complied. Because the hypothetical question posed different circumstances, Sergeant Michael did not testify that if he had faced the same circumstances as Officer Adinolfo he would have obtained a search warrant before attempting to take the Martels' firearms.

Therefore, Adinolfo is entitled to summary judgment on Count II.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment on all of the plaintiffs' claims (document no. 9) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

July 18, 2013

cc:  Charles P. Bauer, Esquire
     John A. Curran, Esquire
     Richard J. Lehmann, Esquire
     Erik Graham Moskowitz, Esquire